UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM HUTCHINSON and
CAITLYN HUTCHINSON,

      Plaintiffs,

v.                                 Case No.:  2:24-cv-201-KCD

KYRK PYROS, KP BUILDERS,
INC., ALLEGHENY CRANE
RENTAL, INC. and
APPALACHIAN BASIN CRANES,
LLC,

      Defendants.

_____/

## ORDER

Before the Court is Defendants' Motion to Dismiss. (Doc. 45.)[1] Plaintiffs have responded in opposition (Doc. 55), making this matter ripe. For the reasons stated below, the motion is denied.

## I. Background[2]

Plaintiff William Hutchinson is a lawyer who worked as in-house counsel for several construction companies owned by Defendant Kyrk Pyros

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Accordingly, this background section relies on the facts recited in the operative complaint. (*See* Doc. 3.)

(collectively, "Defendants"). (*See* Doc. 3.) In that role, Hutchinson received "a salary plus a minimum of 5% of the gross value of the various projects he was charged with, along with bonuses after significant accomplishments." (*Id*. ¶ 11.)

"Following some significant achievements," Defendants promised to buy Hutchinson and his wife (Plaintiff Caitlyn Hutchinson) an Escalade. (*Id*. ¶¶ 12, 13.) Although the car was Hutchinson's, Defendants put it "in the company name." (*Id*. ¶ 14.) They assured Hutchinson that this was only "for tax purposes" and he would receive title shortly. (*Id*.)

Hutchinson then completed "projects worth well over $20 million." (*Id*. ¶ 15.) As compensation, Defendants agreed to buy him and his wife a $1.4 million home. (*Id*. ¶ 16.) Like the Escalade, Hutchinson was told the property would belong to him and his wife "free and clear." (*Id*. ¶¶ 17, 19.) Yet on the day of closing, Defendants presented Hutchinson with a promissory note and a mortgage "for the full price of the [p]roperty[.]" (*Id*. ¶ 21.) Again, Defendants assured Hutchinson this was "for tax purposes." (*Id*. ¶ 22.) And the "money used to acquire the [p]roperty was [his]," he "could either have the [p]roperty, or . . . refinance and have the money." (Doc. 55 at 3.)

But Defendants never gave Hutchinson title to the Escalade. Nor did they forgive the mortgage. Instead, Defendants fired Hutchinson when he raised concerns about illegal conduct, such as "fabricated and forged

accounting documentation," "price-gouging," "unlicensed contracting work," and "fraudulent construction liens." (*Id.* at 4, Doc. 3 ¶ 28.) Defendants then repossessed the Escalade and assigned the mortgage to 4000 Treadwater, LLC—another company owned by Pyros—which successfully foreclosed on the home. (Doc. 3 ¶ 30.)

Plaintiffs then sued, alleging Defendants defrauded Hutchinson and wrongfully fired him because he complained about their unlawful conduct. Plaintiffs seek "employment compensation in an amount exceeding $1,425,757.25"—the combined value of the home and Escalade. (*Id.* ¶ 32.) Additionally, they seek "lost wages and benefits, along with compensation for . . . costs that resulted from the wrongful and retaliatory termination, plus attorneys' fees and litigation costs." (*Id.* ¶ 33.)

Defendants now move to dismiss Counts II (fraud), III (constructive fraud), IV (promissory estoppel), VII (wrongful termination), and VIII (wrongful termination). They argue Plaintiffs are estopped from litigating Counts II, III, and IV because those allegations mirror the first, fourth, fifth, and sixth affirmative defenses from the foreclosure proceeding. (Doc. 45 at 7-10.) And as for Plaintiffs' allegations of wrongful termination, they fail to state a viable claim. (*Id.* at 10-15.)

## II. Legal Standard

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require detailed factual allegations," but demands more than unadorned "the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 664. And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

"Generally, only matters within the four corners of the complaint may be considered in ruling on a motion filed under Rule 12(b)(6)." *Humanitary Med. Ctr., Inc. v. Artica*, No. 8:23-CV-1792-WJF-TGW, 2023 WL 8779956, at *2 (M.D. Fla. Dec. 19, 2023). But "[e]xceptions exist for documents central to the

plaintiff's claims where their authenticity is unchallenged, information of public record, or facts susceptible to judicial notice." *Id*. Thus, the reviewing court may "take judicial notice of state and federal court records of prior proceedings." *Trump v. Am. Broad. Companies, Inc.*, No. 24-21050-CIV, 2024 WL 3519177, at *3 (S.D. Fla. July 24, 2024); *see also Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1308 n.6 (S.D. Fla. May 8, 2020). And as relevant here, it may also take judicial notice of emergency orders issued by the Governor. *See Artica*, 2023 WL 8779956, at *2.

### III. Discussion

### I.    Counts II, III, and IV

Defendants first argue that the doctrine of collateral estoppel precludes Counts II, III, and IV. Collateral estoppel "bars re-litigation of identical issues between identical parties in two proceedings so as to prevent repetitious litigation of what is essentially the same dispute." *Lucky Nation, LLC v. Al-Maghazchi*, 186 So. 3d 12, 14 (Fla. Dist. Ct. App. 2016).

Pointing to the state foreclosure action, Defendants contend "[t]he issue of whether the loan documents were intended as a loan, or were procured through fraudulent inducement by Mr. Pyros and KP Builders, [h]as already [been] adjudicated[.]" (Doc. 45 at 9.) Therefore, Defendants insist Plaintiffs are estopped from enforcing their oral promises to pay Hutchinson an amount

equal to the value of the home and relitigating the validity of the loan documents. (*Id.* at 8.)

Because Defendants seek to give preclusive effect to a state court judgment, Florida law governs its effect on this "subsequent federal diversity action under the doctrine of collateral estoppel." *Mike Smith Pontiac, GMC v. Mercedes-Benz of N. Am.*, 32 F.3d 528, 532 (11th Cir. 1994). In Florida, the party asserting collateral estoppel must show: "(1) the identical issues were presented in a prior proceeding; (2) there was a full and fair opportunity to litigate the issues in the prior proceeding; (3) the issues in the prior litigation were a critical and necessary part of the prior determination; (4) the parties in the two proceedings were identical; and (5) the issues were actually litigated in the prior proceeding." *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. Dist. Ct. App. 2017); *see also Fried v. Stiefel Lab'ys, Inc.*, No. 11-20853-CIV, 2013 WL 12063938, at *2 (S.D. Fla. Sept. 3, 2013). Defendants stumble over most of these elements.

To begin, Defendants have not shown that the parties in the two proceedings are identical. Relying on federal decisions, Defendants mistakenly bypass mutuality. (Doc. 45 at 9.) Unfortunately for them, "[i]n contrast to federal law, the Florida Supreme Court has steadfastly and repeatedly declined to recede from the mutuality of parties requirement." *Goines v. Lee Mem'l Health Sys.*, No. 2:17-CV-656-FTM-29-NPM, 2020 WL 1512100, at *3

(M.D. Fla. Mar. 30, 2020); *see Cook v. State*, 921 So. 2d 631, 634-35 (Fla. Dist. Ct. App. 2005). The parties in this case and the underlying foreclosure proceeding are different. But "[i]n Florida, [a] person who was not a named party to [a prior] action will nonetheless be subject to collateral estoppel arising from that action if that person was in privity with a party in that action." *Martinez v. Mkt. Traders Inst., Inc.*, 757 F. App'x. 815, 818 (11th Cir. 2018). This occurs when a party in the subsequent proceeding can show they have an interest in the prior proceeding, "such that [they] will be bound by the final judgment as if [they] were a party." *Atria v. Hodor*, 790 So. 2d 1229, 1230 (Fla. Dist. Ct. App. 2001). Because Defendants have not shown (or even argued) that they are identical to or in privity with the plaintiff in the state foreclosure proceeding (4000 Treadwater, LLC) they cannot rely on those proceedings to bar this lawsuit.

Neither can Defendants satisfy the first element of their collateral estoppel claim—that the current and prior proceedings present the same issues. According to Defendants, Counts II, III, and IV mirror several of Plaintiffs' affirmative defenses in the foreclosure case. (Doc. 45 at 7.)

For starters, the issues presented in the two proceedings do not neatly overlap. In the foreclosure action, the decisive issues were whether the loan documents were legitimate and whether Defendants' misrepresentations invalidated the mortgage. (*See* Doc. 45-4.) In this proceeding, the decisive issue

is whether Plaintiffs should be awarded damages because Defendants "made false statements of material fact . . . concerning the nature and purpose of the loan documents" to avoid paying Hutchinson. (Doc. 3 ¶¶ 42-49.) "Florida case law does not discuss in any great detail the standard for measuring the identity of issues." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1036 (11th Cir. 2014). So the Eleventh Circuit looks to the factors listed in the Second Restatement of Judgments "[w]hen there is a lack of total identity between the particular matter presented in the second action and that presented in the first," as here. *Id*.

Thus, in determining whether this case presents the same issues that were raised by the state foreclosure proceeding, the Court asks three questions. First, is "there a substantial overlap between the evidence or argument to be advanced in the [current] proceeding and that advanced in the [prior action]?" *Dolgencorp, LLC*, 746 F.3d at 1036. Second, will "the new evidence or argument involve application of the same rule of law as that [was] involved in the prior proceeding?" *Id*. Third, can the "pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in [this one]?" *Id*. Defendants have not shown that any of these considerations weigh in their favor.

First, while there appears to be some overlap in Plaintiffs' arguments between the two cases, the issues presented in Counts II, III, and IV are

broader than those raised in the foreclosure suit. Because the underlying proceeding was limited to the validity of the foreclosure, Plaintiffs' affirmative defenses were tailored to attacking the loan documents' enforceability. (Doc. 45-2 at 4-7.) Here, the evidence and argument will go beyond the enforceability of the loan documents.

As for the second factor, Defendants claim "[t]he burden of proof in the foreclosure [c]ourt and in the instant action is the same." (Doc. 45 at 9.) Yet they offer no authority to support this position. That is insufficient. *See Eli Rsch., LLC v. Must Have Info, Inc.*, No. 2:13-CV-695-FTM-38CM, 2014 WL 4983710, at *2 (M.D. Fla. Oct. 6, 2014) ("In our adversarial system, a claimant must present her case. It is not a court's job to conduct research to provide the proper support for [conclusory] arguments.").

Finally, as for the third factor, it appears the parties exchanged little discovery in the foreclosure case. (Doc. 45-4 at 9-14.)  Indeed, as the state court noted, there are a variety of issues at play here that were not necessary to assess the foreclosure request. (*Id*. at 31:20-32:7.) The Court seriously doubts that the twenty-six pages of documents exchanged in the foreclosure case— consisting of the loan documents, "the transfer agreements for those loan documents," 4000 Treadwater's articles of organization, and a demand letter— fully embrace the issues that will be litigated here. (*Id*. at 7:9-14); *see Dolgencorp, LLC*, 746 F.3d at 1036. Accordingly, Defendants have not shown

that the current proceedings present the same issues that were raised in the foreclosure case. *See Fried*, 2013 WL 12063938, at *2.

Finally, Defendants have not shown that the third and fifth elements of collateral estoppel—the issues were actually litigated in the earlier proceeding and formed "a critical and necessary part of the [state court's] determination"—are satisfied. *Pearce*, 219 So. 3d at 965. An issue "is actually litigated" when it "is properly raised, . . . submitted for determination, and is determined[.]" *Fernandez v. Cruz*, 341 So. 3d 410, 415 (Fla. Dist. Ct. App. 2022). And an issue only forms "a critical and necessary part" of the prior action where its determination was "essential to the prior adjudication." *Criner v. State*, 138 So. 3d 557, 558 (Fla. Dist. Ct. App. 2014); *see also Seaboard Coast Line R. Co. v. Indus. Contracting Co.*, 260 So. 2d 860, 864 (Fla. Dist. Ct. App. 1972) (collateral estoppel acts as a bar "only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered"). "If the issue was not essential to the court's final action, it should not be used for purposes of collateral estoppel." *In re Barreto*, 514 B.R. 702, 716 (Bankr. S.D. Fla. 2013).

While the state court concluded that the loan documents created a valid mortgage, it is unclear how it considered Plaintiffs' affirmative defenses. In ruling on the motion for summary judgment, the state court noted:

> **So, I recognize that there are additional issues between -- between these folks outside of what I am dealing with** . . .
>
> I'm sorry, Mr. Huffman, I don't see how I can find that there's a genuine issue of material fact as to the loan. The loan documents are clear. The information supporting them [is] clear. **Your responses address some issues, but, in all honesty, <u>it goes into a variety of things that have nothing to do [with] -- my case</u>. They have to go with the other one that you guys are playing out with -- in Federal Court.**
>
> **And I recognize that <u>you've raised those as Affirmative Defenses</u> here**, but in terms of the -- I just -- I don't see how I get there with the information that's been provided to me. . .
>
> I don't think there's a genuine issue of material fact, the documents speak for themselves and including the e-mails that are attached to the -- to the motion, they set forth anyway -- so Mr. Valdez, go ahead, prepare a -- an order [granting summary judgment].

(Doc. 45-4 at 31:12-32:23 (emphasis added).) The state court did not identify the affirmative defenses it believed were relevant and those it thought "ha[d] nothing to do" with the foreclosure. (*Id*. at 31:23-25, 32:1-3.) And as best the Court can tell from the transcript, the state court did not decide what compensation is still owed to Hutchinson. Nor did it determine whether Defendants deceived him as to "the nature and purpose of the loan documents" to avoid paying the outstanding compensation. Thus, it cannot be said that the

issues in Counts II, III, and IV were actually litigated in the foreclosure proceeding for purposes of collateral estoppel. *Fernandez*, 341 So. 3d at 415.

But even if they had been, the Court cannot say that their resolution was essential to the state court's ruling. The parties made many arguments for and against summary judgment at the hearing. (*See generally* Doc. 45-4.) While the state court commented on the clarity of the loan documents, it did not explain how Plaintiffs' affirmative defenses factored into its decision. (*Id.* at 31: 12-25, 32: 1-23.) While this Court may take judicial notice of the hearing transcript, it cannot look behind the transcript to surmise what the court was thinking; it must work with what is in the record. Looking at the record before it, the Court cannot say that the issues in Counts II, III, and IV were squarely decided or essential to the state court's decision to grant summary judgment. *In re Barreto*, 514 B.R. at 716; *Criner*, 138 So. 3d at 558; *Seaboard C. L. R. Co.*, 260 So. 2d at 864. Collateral estoppel is thus inappropriate.

## II.   **Counts VII and VIII**

Next up, Defendants argue that Hutchinson's claims under the Florida Whistleblower Act fail as a matter of law. (Doc. 45 at 10-15.) The elements of a retaliation claim under the Whistleblower Act are "(i) that the employee engaged in a protected activity, (ii) the employee was subject to an adverse employment action by the employer, and (iii) there was a causal connection between the protected activity and the adverse action." *Dolcine v. Dentalvana,*

*LLC*, No. 1:19-CV-20832-JLK, 2019 WL 13134560, at *1 (S.D. Fla. Apr. 4, 2019). At issue here is the first element.

The Whistleblower Act identifies three protected activities that may support a wrongful termination claim. Fla. Stat. § 448.102(1)-(3). Hutchinson relies on subsections (1) and (3). (Doc. 3 ¶¶ 82-96.) Subsection (1) prohibits retaliation against employees who "[d]isclose[], or threaten[] to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(1). Subsection (3) forbids retaliation against employees who "[o]bject[] to, or refuse[] to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." *Id.* § 448.102(3).

In Count VII, Hutchinson claims Defendants fired him in violation of § 448.102(1) after he refused to help place "lien[s] on properties" where they performed unlicensed contracting work. (Doc. 3 ¶¶ 83, 86.) Unlicensed contracting is against the law in Florida. *See* Fla. Stat. § 489.127(1), (2)(a)-(c). Before contracting in this state, a contractor "must be registered . . . unless [they are] certified." Fla. Stat. § 489.117(1)(a).

Defendants Kyrk Pyros and KP Builders, Inc. became certified on December 13, 2022. (*See* Doc. 45-8.) They have not provided documentation to suggest they were registered before that date. Instead, they argue Emergency Order 2022-03, issued in the wake of Hurricane Ian, allowed out-of-state

contractors, such as themselves, to "work in Florida without being guilty of unlicensed contract work." (Doc. 45 at 11.) Thus, they argue Hutchinson never threatened to disclose an unlawful act.

Defendants misunderstand the Emergency Order. It states that:

> The provisions of section 489.117(1)(b) and (c) Florida Statutes **are suspended to the extent that registered contractors are not subject to the geographic scope limitations or requirements** as provided in section 489.117(1)(b) and (c) Florida Statutes when providing contracting services withing the aforementioned counties [effected by Hurricane Ian]. . . **[R]egistered contractors working outside the geographical scope of their registration in compliance with this order are not guilty of unlicensed contracting** as defined in section 489.13(1), Florida Statutes[.]

(Doc. 45-7 at 2-3 (emphasis added).) This order did not open the floodgates for contractors from other states to work in Florida, as Defendants suggest. Rather, the term "registered contractor" refers to a class of contractors in this state. In Florida, contractors can be either certified or registered. *Deep S. Sys., Inc. v. Heath*, 843 So. 2d 378, 379 n.1 (Fla. Dist. Ct. App. 2003). Certified contractors "may perform construction work anywhere in Florida." *Id*. Registered contractors are more limited. They must register with the Department of Business and Professional Regulation (DBPR) and "may only perform work covered by the[ir] registration in the county, municipality, or development district for which the[ir] registration applies." *Id*.; Fla. Stat. §

489.105(2), (10); Fla. Stat. § 489.117(1)(b). Thus, the Emergency Order removed the geographic limitations on this class of contractors, letting them participate in the recovery effort without breaking the law.

Defendants' broad interpretation of the Emergency Order is also belied by the DBPR's fact sheet, which accompanied the Emergency Order:

> 4. Does [Emergency Order 2022-03] allow out-of-state contractors without a Florida license to contract for work in Florida?
>
> **No**, contractors are required to obtain registered or state licensure as a Florida contractor before contracting for work that requires licensure under Chapter 489, Florida Statutes.

*See* https://www2.myfloridalicense.com/pro/cilb/documents/2022-10-03_DBPR _EO_2022-03_Fact%20Sheet.pdf (last visited Aug. 30, 2024) (emphasis added).

This means Count VII states a claim. Because Defendants were not registered or certified before December 13, 2022, they were not authorized to perform contracting services under Emergency Order 2022-03. And any contracting services performed before they received their certification were done unlawfully. Furthermore, if they fired Hutchinson for "disclos[ing], or threaten[ing] to disclose" such illegal contracting, as he claims, they did so in violation of the Whistleblower Act. *See* Fla. Stat. § 448.102(1).

Turning to Count VIII, Hutchinson claims Defendants terminated his employment in violation of § 448.102(3) after he refused to participate in a

pattern of "systematic fraud, forgery, and theft." (Doc. 3 ¶ 89.) According to Hutchinson, Defendants were "fabricat[ing] and forg[ing] accounting documentation including AIA contracts with the architectural firm Stantec," engaging in predatory pricing, and "obtain[ing] stolen Porsches from deceased persons through salvage titles." (*Id.* ¶¶ 26-27, 89-90, 92, 93.) Defendants argue that Count VIII must be dismissed because "Plaintiff [has] not identif[ied] what was allegedly forged or stolen. He merely includes a vague sentence listing broad illegal activities that are devoid of substantiation with factual support." (Doc. 45 at 12-13.) As best the Court can tell, Defendants are suggesting that Fed. R. Civ. P. 9(b)'s heightened pleading standard applies here.

"Rule 9(b) provides that: [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Doe v. Grand Villa of New Port Richey*, 540 F. Supp. 3d 1168, 1172 (M.D. Fla. 2021). But "passing references to fraud" will not trigger Rule 9(b)'s heightened pleading requirements. *Symphony, LLC v. Romeu*, No. 1:18-CV-22511-KMM, 2019 WL 2107288, at *2 (S.D. Fla. Mar. 13, 2019); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1335 (N.D. Ga. 2019) ("[I]t is not enough that a claim be near enough to fraud, or fraud-like for Rule 9(b) to apply."). Rather, Rule 9(b) is triggered only when the "claim sounds in fraud." *Flanagan v. Medmetry, Inc.*, No. 8:22-CV-2452-WFJ-

AEP, 2022 WL 18781408, at *3 (M.D. Fla. Feb. 17, 2022). "[T]o sound in fraud, the elements of the claim must be similar to that of common law fraud, requiring, among other things, proof of scienter, reliance, and injury." *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1335 (N.D. Ga. 2019).

Count VIII may refer to fraud, but it does not sound in fraud. The crux of Count VIII is Hutchinson's wrongful termination, not the alleged fraudulent conduct he claims to have uncovered. Moreover, Defendants have not shown that the elements of the claim are "similar to that of common law fraud." *In re Equifax, Inc.*, 362 F. Supp. 3d at 1335. As a result, Rule 9(b)'s heightened pleading standards do not apply here, and the more generalized factual allegations pled are enough.

Finally, Defendants argue that Counts VII and VIII should be truncated because they are "void of any specific facts regarding . . . Allegheny Crane Rental, Inc. and Appalachian Basin Cranes, LLC." (Doc. 45 at 13-15.) Defendants miss the forest for the trees. Again, the crux of Counts VII and VIII is Hutchinson's wrongful termination. The decisive issue is thus whether Hutchinson has pled facts, accepted as true, showing that Allegheny Crane and Appalachian Basin wrongfully terminated his employment because he engaged in a protected activity.

The answer is yes. Hutchinson alleges he worked for both Allegheny Crane and Appalachian Basin, and his pay generally came from some combination of those entities and KP Builders. (Doc. 3 ¶¶ 5-6, 9.) Defendant Pyros owns and controls all three companies, which are "close affiliates." (*Id.* ¶¶ 4-6; Doc. 55 at 19.) Important for our purposes, Pyros terminated Hutchinson's employment with Allegheny Crane and Appalachian Basin after he refused to help place unlawful "lien[s] on properties" and declined to participate in "fraud, forgery, and theft." (Doc. 3 ¶¶ 28, 83, 86, 89.) Even if Allegheny Crane and Appalachian Basin did not perform the unlicensed contracting work at the heart of Count VII or lead the "fraud, forgery, and theft" that underlies Count VIII, they are alleged to have participated in the germane activity that is the foundation of each claim (i.e., Hutchinson's termination). (*Id.* ¶¶ 83-96.) Thus, taking the factual allegations as true, as the Court must at this stage, Hutchinson has done enough to state claims against Allegheny Crane and Appalachian Basin in Counts VII and VIII. The relationship between the various Defendants and how these entities employed Hutchinson is best left for adjudication after the factual record is developed.

Accordingly, it is **ORDERED**:

1.    Defendants' Motion to Dismiss is **DENIED**. Defendants must respond to the complaint within 14 days.

**ENTERED** in Fort Myers, Florida on September 3, 2024.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record